UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAFAYETTE WATTS, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 10 C 3894 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| STEPHEN DUNCAN, Warden, ) | |
| Lawrence Correctional Center, [1] ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Petitioner Lafayette Watts is currently serving a ninety-year sentence for first-degree murder and a concurrent thirty-year sentence for attempted murder. Watts has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Because Watts has procedurally defaulted both of his claims by failing to present them through one complete round of state court review and no exceptions to procedural default apply, Watts' petition for a writ of habeas corpus is denied.

**BACKGROUND**

The Court will presume that the state court's factual determinations are correct for the purposes of habeas review, as Watts has not pointed to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court thus adopts the state court's recitation of the facts and begins by summarizing the facts relevant to the petition.

---

[1] Stephen Duncan is presently the warden at Lawrence Correctional Center and is substituted as the proper Respondent in this matter. *See* Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

## I. Watts' Trial and Conviction

The incident in question took place during the evening of March 22, 1998. The victims were Shanelle Jackson and her nine-year-old son, Stephon Thompson. That night, Thompson heard screaming coming from Jackson's bedroom. When Thompson opened the door, he saw Watts stabbing his mother multiple times with a kitchen knife. Thompson attempted to leave to get help, but before he could leave the house, Watts stopped him at the front door. Watts stabbed Thompson in the chest. When Watts returned to Jackson's bedroom, Thompson ran outside where he encountered two men who proceeded to call the police.

At a bench trial in 1999, Watts was convicted of the first-degree murder of Jackson and attempted first-degree murder and aggravated battery of Thompson. He was sentenced to a ninety-year prison term for murder, which was to be served concurrently with the thirty-year term for attempted murder. The aggravated battery conviction was merged into the attempted murder conviction as a lesser-included offense.

## II. Direct Appeal

On appeal, Watts argued that: (1) he was denied a fair trial when the trial court admitted prior consistent statement evidence that improperly bolstered the state's chief witness; (2) he was denied a fair trial due to improper admission of hearsay evidence; (3) he was denied a fair trial due to improper use of testimony by the victim's family; (4) he was denied a fair trial as a result prosecutorial misconduct during closing arguments; (5) his due process rights were violated because he was not proven guilty of attempted murder beyond a reasonable doubt; (6) his trial counsel was ineffective for failing to object to the evidence or statements referred to in claims 1–4; and (7) the extended-term sentencing statute, which was used in determining his sentence, was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed.

2d 435 (2000). On August 1, 2001, the Illinois Appellate Court affirmed the convictions but remanded for resentencing because his ninety-year extended-term sentence violated *Apprendi*.

Watts then filed a petition for leave to appeal ("PLA") with the Illinois Supreme court, arguing the same seven claims he raised in the appellate court, despite the appellate court ruling in his favor with regards to the *Apprendi* claim. The Illinois Supreme Court denied the PLA on February 5, 2003.

The State also filed a PLA from the appellate court's *Apprendi* decision. The Illinois Supreme Court denied the state's PLA on February 5, 2003, but issued a supervisory order vacating the appellate court order and directing the court to reconsider in light of *People v. Swift*, 781 N.E.2d 292, 202 Ill. 2d 378, 269 Ill. Dec. 495 (2002). On April 10, 2003, the appellate court affirmed petitioner's convictions but remanded for resentencing under *Apprendi* and *Swift*. Again, the State filed a PLA in the Illinois Supreme Court. On October 7, 2003, the PLA was denied but the Illinois Supreme Court issued a supervisory order vacating the appellate court order and directing the court to reconsider in light of *People v. Crespo*, 788 N.E.2d 1117, 203 Ill. 2d 335, 273 Ill. Dec. 241 (2001) and *People v. Thurow*, 786 N.E.2d 1019, 203 Ill. 2d 352, 272 Ill. Dec. 185 (2003). On December 17, 2003, the appellate court affirmed the convictions and sentences because although the sentences violated *Apprendi*, they did not constitute plain error. On January 3, 2005, Watts filed a motion for leave to file a late PLA, which the Illinois Supreme Court denied on March 21, 2005.

Contemporaneous to the appellate court's second decision and the Illinois Supreme Court's second supervisory order directing the appellate court to reconsider, the trial court judge resentenced the petitioner to a non-extended term of sixty years for murder. Watts again appealed from this new sentence, but subsequently dismissed the appeal before the appellate

court issued its second decision. Due to this Court's confusion regarding whether the sentence in force was sixty or ninety years, the Court directed the parties to submit a joint memorandum on the issue. Doc. 35. Because jurisdiction never reverted to the trial court for resentencing prior to the appellate court's affirmance of the ninety-year sentence on December 17, 2003, the corrected mittimus reflects a ninety-year sentence. Doc. 35-1.

### III.  State Post-Conviction Proceedings

Watts filed a timely petition pursuant to 725 Ill. Comp. Stat. § 5/122-1 in the Circuit Court of Cook County on September 27, 2005. He raised three claims in this petition. His first claim was that the trial court abused its discretion when it failed to consider mitigating evidence demonstrating he should have been convicted of second-degree murder. His second claim was that his extended-term sentence violated due process and *Apprendi*. His third claim was that his trial and appellate counsel were ineffective for failing to: (a) order a psychiatric evaluation report; (b) object to the extended-term sentence; (c) subpoena medical records and a police report about his attempted suicide; and (d) call eyewitnesses to the victim's violent acts.

The trial court dismissed Watts' post-conviction petition on October 11, 2005. Watts appealed but later filed a motion to dismiss the appeal. The appellate court granted that motion on August 25, 2006 and dismissed the appeal. Watts filed a *pro se* PLA in the Illinois Supreme Court, which was denied on January 24, 2007, but the Illinois Supreme Court issued a supervisory order directing the appellate court to reinstate the appeal. In the appellate court, Watts raised only one claim that his *pro se* post-conviction petition should not have been dismissed because it stated the gist of a constitutional claim—specifically that his trial counsel was ineffective for failing to obtain his medical records for use at both trial and sentencing. The appellate court affirmed the trial court's judgment on February 3, 2009. Watts again filed a *pro*

4

*se* PLA, in which he raised three claims: (1) his post-conviction petition presented the gist of a constitutional claim and therefore should have survived first-stage dismissal; (2) the appellate court erred by failing to view his claims about mental illness and attempted suicide with a less stringent standard, since his petition was filed *pro se*; and (3) despite his failure to attach supporting records, which is ordinarily fatal to a post-conviction petition, the appellate court should have considered the ineffective assistance of trial counsel claim, in any event, to avoid a miscarriage of justice. On September 30, 2009, the Illinois Supreme Court denied Watts' PLA. Watts did not file a petition for writ of certiorari with the United States Supreme Court but timely filed his federal habeas corpus petition with this Court on June 14, 2010.

**LEGAL STANDARD**

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case or unreasonably extended that principle to a new context to which it does not apply or unreasonably refused to extend a principle when it should apply. *See id.* at 407.

**ANALYSIS**

At this stage of his post-conviction proceedings, Watts has asserted two grounds for relief: (1) his extended-term sentence violates due process; and (2) his trial counsel was ineffective for failing to investigate his mental health history, obtain hospital records, and order a psychological evaluation. Respondent argues that Watts has procedurally defaulted all of his claims.

**I.    Procedural Default**

A habeas petitioner must fairly present each claim to every level of the Illinois courts and failure to do so results in a procedural default that precludes federal court review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). To be "fairly presented," a claim must be brought in one complete round of state court review, either on direct appeal or in post-conviction proceedings. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this means a petitioner must appeal up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46. When a petitioner has exhausted his state court remedies without presenting the claim in one complete round of state court review, his habeas claim is procedurally defaulted. *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). A claim may also be procedurally defaulted if the Illinois court relied on an independent and adequate state ground to dismiss a claim. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

A petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that a court's failure to consider the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006). Cause may be found to exist where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S.

6

263, 283 n.24, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (citation omitted) (internal quotation marks omitted). Prejudice may be found if the petitioner demonstrates that the violation of his federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (quotation marks omitted)). The fundamental miscarriage of justice exception is limited to situations in which the constitutional violation resulted in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

### A. Watts' *Apprendi* Claim Was Not Raised Through One Complete Round of State Court Review and is Procedurally Defaulted.

Watts argues that he entitled to relief because his extended-term sentence violates due process. Respondent maintains that this claim is defaulted. Watts had two opportunities to present the *Apprendi* issue to the Illinois Supreme Court and did not do so properly either time. Therefore, Watts did not present this claim through one complete round of state court review and his *Apprendi* claim is procedurally defaulted.

Watts' first appeal did not properly place the *Apprendi* issue before the Illinois Supreme Court because the issue was moot. Watts was originally sentenced to a ninety-year extended term for first-degree murder. On direct appeal, Watts argued his sentence was extended in violation of due process under *Apprendi*. On August 1, 2002, the appellate court vacated the sentence and remanded the matter to the state trial court, rejecting his other claims. In response, Watts filed a PLA reasserting all seven claims he presented in the appellate court. Even though he prevailed on the *Apprendi* claim, Watts re-raised this issue. This was not a fair presentment of the claim to the Illinois Supreme Court because that court did not have the opportunity to adjudicate the issue.

Watts' first opportunity to fairly present his claim to the Illinois Supreme Court would have been through a response to the State's appeal of the grant of his *Apprendi* challenge. The State filed a PLA in the Illinois Supreme Court on that issue, but Watts did not respond. Watts had a second opportunity to present the *Apprendi* claim to the Illinois Supreme Court when the appellate court reviewed and upheld his sentence on December 17, 2003 under the plain error standard. However, Watts did not file a PLA.

The Supreme Court has established the fair presentment requirement because "it would be unseemly in our dual system of government for the federal courts to upset a state-court conviction without affording to the state courts the opportunity to correct a constitutional violation." *Duckworth v. Serrano*, 454 U.S. 1, 4, 102 S. Ct. 18, 70 L. Ed. 2d 1 (1981). The state courts must have the opportunity to adjudicate the federal issue. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). The only time the *Apprendi* issue reached the Illinois Supreme Court it was moot because Watts had been granted a sentence review. An issue is moot when a court cannot grant "any effectual relief" to defendant. *People v. Shelton*, 929 N.E.2d 144, 162, 401 Ill. App. 3d 564, 340 Ill. Dec. 840 (2010). Therefore, the Illinois Supreme Court never had a fair opportunity to adjudicate this issue. *See, e.g.*, *Harris v. Scribner*, No. S-05-1976 LKK CMK P, 2006 WL 1747591, at *1 (E.D. Cal. June 22, 2006) (California Supreme Court's denial of petition for writ of mandate as moot was not an adjudication on the merits).

Watts also never presented his *Apprendi* claim in one complete round of post-conviction proceedings. The *Apprendi* claim was included in the post-conviction petition filed in the state trial court; however, Watts did not raise the claim in his appeal of the dismissal of the petition, either at the appellate or supreme court level.

Because Watts did not properly exhaust his *Apprendi* claim, it is procedurally defaulted.

8

### B. Similarly, Watts' Ineffective Assistance of Trial Counsel Claim is Procedurally Defaulted For Failure to Complete One Round of State Court Review.

Watts argues that his trial counsel was constitutionally ineffective for failing to investigate his mental health history, order a psychological evaluation, and obtain medical records. This claim is also procedurally defaulted.

Watts did not present the claim that his trial counsel was ineffective for failing to investigate his mental health history or order a psychological evaluation in one complete round of state court review. Watts did not raise any component of his ineffective assistance claim during direct appeal. During post-conviction proceedings, Watts did not assert that trial counsel failed to investigate his mental health history or order a psychological evaluation in the appellate court. *See Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (petitioner's ineffective assistance claim procedurally defaulted because not raised in the state appellate court). Thus, these claims are procedurally defaulted.

Separate from failing to order a mental health history or psychological evaluation, Watts argues that his trial counsel was ineffective for failing to obtain hospital records. Respondent argues that this claim is not properly before this court because the state court has already dismissed it based on an independent and adequate state procedural rule. *See McKee*, 598 F.3d at 382. The state appellate court upheld the dismissal of this claim because Watts failed to attach affidavits to his post-conviction petition. It is well-established Illinois law that a post-conviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2. Dismissal on the basis of failure to attach affidavits, records or other evidence is an independent and adequate state ground barring federal habeas review. *See, e.g.*, *United States ex rel. Johnson v. Gaetz*, No. 10 C 1525, 2010 WL 2044930, at *4 (N.D. Ill May 24, 2010) (explaining appellate court's

dismissal for lack of evidentiary support is an independent and adequate state ground). Watts' medical records claim is therefore procedurally defaulted.

C. **Watts Failed to Establish Any Exception to Procedural Default.**

A federal court may reach the merits of a procedurally defaulted claim only if the petitioner shows cause for the default and actual prejudice or that the failure to consider the claim will result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536.

Watts does not argue any exceptions to procedural default for his ineffective assistance of counsel claim. Watts does, however, attempt to establish cause for the default and actual prejudice on the *Apprendi* claim. While Watts makes an argument that is increased sentence is actual prejudice, Watts fails to establish any cause for the default. He does not make any case that an objective factor undercut his ability to present this claim at every stage of review, as required. *See United States ex rel. Neumann v. Page*, 881 F. Supp. 1194, 1199 (N.D. Ill. 1995), *aff'd*, 78 F.3d 587 (7th Cir. 1996). Watts does not attempt to argue that any fundamental miscarriage of justice will occur if this Court does not consider his *Apprendi* claim. Thus, Watts has not established that any exceptions to procedural default apply to any of his claims.

**CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. In order to be entitled to a certificate of appealability, a habeas petitioner must make a substantial showing of a denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). A petitioner does this by showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to

deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Here, a reasonable jurist would not find this Court's ruling debatable because of the clear procedural default. *See Slack*, 529 U.S. at 484–85 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Watts' petition for a writ of habeas corpus pursuant to 22 U.S.C. § 2254 is denied and the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Dated: February 27, 2015

SARA L. ELLIS
United States District Judge